J-S25020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOIA MORELLO | : | |
| | : | |
| Appellant | : | No. 2415 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 18, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001212-2025

BEFORE: SULLIVAN, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.: **FILED AUGUST 3, 2026**

Joia Morello ("Morello") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following her convictions of simple assault and possessing instruments of a crime ("PIC").[1] On appeal, Morello challenges the sufficiency of the evidence supporting her convictions. After review, we affirm.

On November 15, 2024, Morello went to the residence of her ex-boyfriend, Joe Constantino ("Costantino"). Costantino lived in the residence with Azerrad Mournes ("Mournes"). When Morello arrived, Constantino told her she was not welcome in the home. Morello then made her way to the backyard of the residence. While she was in the backyard, Mournes went

_____

[1] 18 Pa.C.S. §§ 2701(a), 907(a).

outside to get her to leave the premises. As he approached Morello, she struck him with a metal object. Mournes suffered a bruised wrist from the strike. Following the incident, he went inside and called the police. Morello went across the street, found two police officers and asked for help. The police officers called an ambulance for her, and she was taken to the hospital. She was not arrested at that time.

On February 1, 2025, the police arrested Morello. The Commonwealth charged Morello with aggravated assault, recklessly endangering another person, simple assault, and PIC. The case proceeded to a bench trial, after which the trial court found Morello guilty of simple assault and PIC. The trial court sentenced her to two years of probation. Morello timely filed the instant appeal and a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Morello raises the following issue for review: "Was not the evidence insufficient to convict [Morello] of simple assault and possessing an instrument of crime, as self-defense was raised and the Commonwealth failed to disprove self-defense beyond a reasonable doubt?" Morello's Brief at 2.

Morello argues the evidence was insufficient to support her simple assault and PIC convictions because she acted in self-defense. *Id.* at 7, 16. She asserts that she was not the initial aggressor, and that Mournes testified that he came outside to confront her. *Id.* at 7, 15. According to Morello, he overpowered her and smashed her to the ground. *Id.* at 7, 8-9, 14. She

claims she grabbed and used an antenna to protect herself. *Id.* at 8-9, 14-15. Further, Morello explained that she properly raised the claim of self-defense through her testimony at trial. *Id.* at 9-12. Morello also notes that she did not have a duty to retreat because she used non-deadly force. *Id.* at 15, 16. Finally, she observes that the pipe she allegedly used in the incident was not recovered, and that her version of the incident is corroborated by police bodycam footage. *Id.* at 16.

We review a challenge to the sufficiency of the evidence according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Rosario*, 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation and brackets omitted).

A person is guilty of simple assault if she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18

Pa.C.S. § 2701(a)(1). Bodily injury is the "impairment of physical condition or substantial pain." *Id.* § 2301.

A person is guilty of PIC if she "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An instrument of crime is "(1) [a]nything specially made or specially adapted for criminal use[, or] (2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." *Id.* § 907(d).

Self-defense is a justification defense permitting the use of force toward or upon another person "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). A person employing non-deadly force in self-defense does not have a duty to retreat. *See id.* § 505(b)(3) ("Except as otherwise required by this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating"). An actor facing non-deadly force may respond with force "so long as it is only force enough to repel the attack." *Commonwealth v. Pollino*, 467 A.2d 1298, 1301 (Pa. 1983).

A claim of self-defense "may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be

- 4 -

elicited through cross-examination." ***Commonwealth v. Hansley***, 24 A.3d 410, 420-21 (Pa. Super. 2011) (citation omitted). "If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Steele***, 234 A.3d 840, 846 (Pa. Super. 2020) (citation omitted). Further, "[w]hen the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot simply rely on the [factfinder's] disbelief of the defendant's testimony[.]" ***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa. Super. 2014). "The complainant can serve as a witness to the incident to refute a self-defense claim." ***Id.***

At trial, Mournes testified that Morello repeatedly showed up to Constantino's residence, where Mournes also lived. N.T., 8/18/2025, at 8, 9, 17. He indicated that on November 15, 2024, Morello arrived at the home and started breaking things in the backyard and throwing things at the house. ***Id.*** at 9-10. After about an hour, Mournes went into the backyard, stood a few feet away from Morello, and asked her to leave. ***Id.*** at 10-11. He indicated that Morello did not respond and instead was mumbling to herself. ***Id.*** at 11. As he approached Morello, she turned around and swung a steel pipe at him. ***Id.*** at 11, 21; ***see also id.*** at 12 (describing the pipe as five feet long and a half-inch thick, with a pointed end). Mournes raised his arm above his head and Morello hit his hand with the pipe. ***Id.*** at 11. He testified that

he never struck, grabbed, or threw Morello to the ground. *Id.* at 21-22. Morello stated he then grabbed the pipe from her and threw it over the fence. *Id.* As Morello screamed and yelled at him, Mournes ran back inside the house. *Id.* at 12-13; *see also id.* at 13 (stating that Morello was blocking him from leaving the scene). Finally, Mournes explained that his wrist was swollen for two weeks after being hit by the pipe. *Id.* at 14-15.

Morello, on the other hand, testified she went to Constantino's house to pick up her mail. *Id.* at 28-29. She explained Constantino handed her a check and went back into the house. *Id.* at 30. Morello indicated that she went to the backyard to look at the koi fishpond. *Id.* at 30, 31. She testified that Mournes came outside, approached her, and yelled at her to get off the property. *Id.* at 31. Morello said that she kept backing up because she was afraid and grabbed an antenna that was on the ground. *Id.* She testified that Mournes grabbed the antenna, grabbed her hair, smashed her face into the ground, and then picked her up and threw her into the garage. *Id.* at 32. Further, Morello stated that he removed her shoes, poured alcohol on her, and then tried to ignite a lighter. *Id.* at 32, 44.

After the passage of a few hours, she was able to get up, and she observed two policemen across the street and went over to tell them what

happened.[2] *Id.* at 32, 33, 44-45. She admitted, however, that she did not report Mournes' alleged assault until three months after the incident, though she stated she tried to make a report "for months and [the police] wouldn't take [her] phone calls."[3] *Id.* at 34, 36, 47. Morello testified that the officers called an ambulance to take her to the hospital, where she was given a CAT scan. *Id.* at 38, 40. When asked what injuries were found, she responded: "My head was smashed into the ground by a 300-pound-like assaulter," and that she continues to suffer from facial pain and memory loss. *Id.* at 41.

The trial court found the Commonwealth disproved Morello's self-defense claim:

> The record … establishes that [Morello] was the aggressor, and therefore her claim of self-defense was, and remains, unavailing.
>
> The evidence established that [Morello] showed up uninvited at the Tulip Street residence and, by [Morello's] own account, she was denied entry by the owner. Admittedly disgruntled, [Morello] proceeded to the rear of the property, where she started throwing things around the yard. When [] Mou[rn]es went outside to ask her to leave, [Morello] swung a steel pipe at him, striking him on the hand. [] Mournes wrestled the weapon away from [Morello] before retreating into the home

_____

[2] Later in her testimony, however, Morello stated that "after the incident, I went to -- I walked for hours. And then I remember going to Parx, and I ran into my friend, Helen, who said that I could stay at her house." N.T., 8/18/2025, at 53.

[3] Although Morello clearly reported some injury to the officers she approached following the incident, we do not know exactly what she told them. The bodycam footage was played at trial, *see id.* at 34, but it was not included in the certified record on appeal. As stated above, however, she admitted that she did not report the alleged assault or Mournes' alleged involvement at that time.

and calling the police. The evidence thus established that [Morello] was the aggressor in this case.

While [Morello] offered a divergent account of the events at issue, the court found the testimony of [] Mournes credible, and [Morello's] testimony *not* credible …. As the court was free to believe all, part, or none of the testimony of any witness, there exists no basis to disturb its judgment.

Trial Court Opinion, 11/14/2025, at 8 (some capitalization omitted; emphasis in original).

Our review of the record supports the trial court's conclusion and its credibility determinations. When viewed in the light most favorable to the Commonwealth, the evidence establishes that Morello was the initial aggressor, and that Mournes did not physically threaten Morello in any way. *See Smith*, 97 A.3d at 789 (stating the trial court found the complainant's testimony more credible and held that the Commonwealth disproved the defendant's self-defense claims because the complainant testified that the defendant unreasonably escalated an altercation when he attacked the complainant with a box cutter). In arguing to the contrary, Morello relies on her version of what occurred; the trial court, however, did not believe Morello. It is well settled that "a [factfinder] is not required to believe the testimony of the defendant who raises the [self-defense] claim." *Id.* at 788 (citation omitted). In fact, as the trial court correctly observes, as the factfinder, it was free to assess the credibility of the witnesses and believe all, part, or none of the witnesses' testimony. *See Rosario*, 307 A.3d at 765. The testimony the trial court found to be credible reflects that although Mournes approached

Morello, she immediately struck him with the pipe. Mournes did not have a weapon, did not touch Morello, and she was not in any imminent danger.

Further, the evidence, viewed in a light most favorable to the Commonwealth, is sufficient to support Morello's convictions for simple assault and PIC. *See Commonwealth v. Tukhi*, 149 A.3d 881, 888 (Pa. Super. 2016) (conviction of simple assault and PIC upheld where the evidence proffered at trial was the victim's testimony that the defendant struck him in the arm with an iron pipe); *see also Commonwealth v. Davidon*, 177 A.3d 955, 959 (Pa. Super. 2018) (evidence of bruising from physical attacks sufficient to prove the defendant caused bodily injury). We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/3/2026